IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRUCE S. MARKS**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 20-4915-KSM** |
| **UNIQUE LIFESTYLE VACATIONS, LLC,** | |
| Defendant. | |

**MEMORANDUM**

**MARSTON, J.**                                                                              **November 22, 2021**

Presently before the Court is Plaintiff Bruce Marks's motion for default judgment against Defendant Unique Lifestyle Vacations ("Unique") in a Telephone Consumer Protection Act ("TCPA") case. For the reasons discussed below, we deny Marks's motion for default judgment, without prejudice.

I.

On November 27, 2018, Marks registered his personal cell phone number on the national Do-Not-Call ("DNC") registry. (Doc. No. 2 at ¶¶ 3, 19, 21.)[1] Nonetheless, even after that date, Marks continued to receive telemarketing sales calls on his personal cell phone from Unique, a Florida LLC with its principal place of business located at 2251 Consulate Dr. Ste. D, Orlando, FL 32837, and/or Defendant Platinum Marketing Group Inc. ("Platinum"), a Florida corporation with a principal place of business located at 2251 Consulate Dr. Ste. D, Orlando, FL 32387. (*Id.* at ¶¶ 3, 9–10, 22.) Unique and Platinum used the telemarketing calls to promote Hilton Grand

---

[1] Under Marks's T-Mobile plan, he incurs a charge for incoming/outgoing calls on his personal cell phone. (*Id.* at ¶ 30.)

Vacations ("HGV") products and services. (*Id.* at ¶¶ 3, 20.) During the calls, "Unique and/or [its co-defendant] Platinum" referred to Marks "having stayed [at] Hilton-branded properties in the past." (*Id.* at ¶ 12.) Marks alleges that Hilton companies provided his cell phone number to Defendants, including Unique. (*Id.* at ¶ 29.)

Ultimately, from November 27, 2018 until October 5, 2020, Marks "received approximately 44 calls from Unique and/or Platinum," which included one call on November 11, 2019, two calls on January 6, 2020, two calls on January 21, 2020, one call on January 24, 2020, two calls on February 6, 2020, and one call on September 16, 2020. (*Id.* at ¶ 22.) Marks repeatedly requested that Unique stop calling him and that it add his number to its own "Do Not Call" list. (*Id.* at ¶ 24.) In addition, on January 9, 2020, Marks instructed Unique in writing that its calls must cease. (*Id.* at ¶¶ 3, 23.) Specifically, Marks informed Unique in a letter sent by certified mail: "Effective today . . . your company is to STOP ALL CALLS and TEXT MESSAGES to my cell phone, 215-939-[XXXX]. I do not authorize your contact with my cell phone . . . I have repeatedly requested that these CALLS concerning vacations cease over the last several years." (*Id.* at ¶ 23.) Notwithstanding Marks's registration on the DNC list, his verbal requests, and his letter, Marks continued to receive telemarketing calls from Unique. (*Id.* at ¶¶ 3, 25.)

On October 5, 2020, Marks filed a complaint in this Court, asserting claims against Unique under the TCPA (Doc. No. 1), and four days later, he filed an amended complaint (Doc. No. 2).[2] When Unique failed to respond to the complaint within 21 days, Marks moved for entry of default (Doc. No. 5), which this Court denied, without prejudice, on December 8, 2020 for failure to properly abide by Pennsylvania rules for service by mail (*see* Doc. No. 6). On January

---

[2] Marks also named Platinum and Hilton Grand Vacations, Inc. However, Marks has filed Stipulations of Dismissal dismissing the claims against those Defendants. (*See* Doc. Nos. 27, 32.)

29, 2021, Marks again moved for entry of default (Doc. No. 15), which the Clerk of Court entered that same day.

Marks then moved for default judgment, seeking $210,000 in damages.  (Doc. No. 16.) On April 21, 2021, Marks notified the Court that following the Supreme Court's ruling in *Facebook, Inc. v. Dugid*, 141 S. Ct. 1163 (2021), he was withdrawing his claims under 47 U.S.C. § 227(b) and that default judgment should be entered in the amount of $64,500 instead.  (Doc. No. 26.)  Thus, what remains is Marks's claim that Unique called his cell phone number for a telemarketing purpose despite his number being on the DNC Registry in violation of § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2) and after Marks requested that he not receive calls from Unique in violation of 47 C.F.R. § 64.1200(d)(3).

The Court scheduled a hearing on the motion for October 14, 2021, ordered Marks to file a supplemental memorandum and affidavit, and directed Marks to serve Unique Lifestyle Vacations with copies of the Order, his motion for default judgment, and his memorandum and affidavit.  (Doc. No. 28.)  Marks has represented that he is not seeking attorneys' fees or costs. (Doc. No. 29.)

Marks filed an Affidavit of Service, confirming that he served the required documents on Unique by way of email; although personal service was attempted, it was ultimately not effectuated because Unique's registered agent no longer resides at her listed address, and although certified mail was sent to two separate addresses, no executed return receipt was received back.  (Doc. No. 30.)  No one from Unique attended the hearing on March 10, 2021.

## II.

"After a clerk enters default pursuant to Federal Rule of Civil Procedure 55(a) against a party that has 'failed to plead or otherwise defend' an action, the party may be subject to entry of

3

a default judgment." *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 634 (quoting Fed. R. Civ. P. 55(a)). The clerk may enter default judgment in a plaintiff's favor if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

When a party moves for default judgment, the Court considers the three factors outlined by the Third Circuit in *Chamberlain v. Giampapa*: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." 210 F.3d 154, 164 (3d Cir. 2000); *see also, e.g.*, *Spurio v. Choice Sec. Syst., Inc.*, 880 F. Supp. 402, 404 (E.D. Pa. 1995) (same). However before turning to the *Chamberlain* factors, the Court must first "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 635 (quotation marks omitted).

Here, the Court finds that Marks has not stated a claim under § 227(c) for violation of the DNC Registry. Section 227(c)(3)(F) states that if the Federal Trade Commission decides to establish a DNC database, the regulations shall "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database." 47 U.S.C. § 227(c)(3)(F). In turn, the resulting regulation states, "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

Although Marks did not specifically allege that he received calls from Unique on his

*residential* phone or that he used his cell phone for residential purposes, we find that his allegations pertaining to his cell phone—namely, that he used the cell phone for "personal purposes, including booking vacations"—are sufficient to meet this first element. (Doc. No. 2 at ¶ 30.) *Cf. Dudley v. Vision Solar, LLC*, Civil Action No. 21-659, 2021 WL 3077557, at *5 (E.D. Pa. July 21, 2021) ("The consensus in this Circuit is that Do Not Call Claims may apply to cell phones. A plaintiff may provide specific facts to support his allegation that his cell phone is residential under the TCPA. However, it is not required that a plaintiff provide extensive detail to state a plausible claim as to the residential character of his cell phone. Here, the Complaint explicitly alleges that the Plaintiffs' cell phone numbers are used 'for residential purposes.' While the Complaint does not allege additional facts to elaborate on the residential nature of Plaintiffs' cell phones, we conclude that the explicit allegation that the cell phone numbers were used 'for residential purposes' is sufficient to plausibly allege that they were, in fact, used for such purposes[.]").[3]

However, the Court finds that Marks has not sufficiently pled facts showing that Unique is the party that made the calls. (*See* Doc. No. 2 at ¶ 21(b) ("From January 1 through December 1, 2017, Plaintiff received approximately 20 calls from Unique *and/or* Platinum." (emphasis

---

[3] *But see Strange v. ABC Co.*, Civil Action No. 19-1361, 2021 WL 798870, at *3–4 (W.D. La. Mar. 1, 2021) ("Some courts who have evaluated similar TCPA claims have dismissed them after concluding that Section 227(c)(5) does not encompass calls to cell phones, while other courts have required a plaintiff to present evidence establishing that he used his cell phone for residential purposes . . . From this, the Court finds persuasive authority that plaintiffs, like Strange, who register their cell phones with do-not-call registries are presumed to be residential subscribers. However, this Court finds that Strange is still required to put forth evidence supporting this presumption, as he is seeking enforcement of Section 227(c)(5) against the Defendants . . . Thus, Strange cannot prevail under Section 227(c)(5) without sufficient proof that he used his cell phone for residential purposes."); *Cunningham v. Creative Edge Mktg. LLC*, Civil Action No. 4:19-CV-00669-ALM-CAN, 2021 WL 2792353, at *4 (E.D. Tex. June 16, 2021) ("Plaintiff has not sufficiently alleged a violation of § 227(c)(5) of the TCPA . . . Plaintiff alleges, and indeed confirmed at the evidentiary hearing, that the calls were made to one of his cell phones—not a residential telephone. Various courts, including this Court, have considered similar claims by Plaintiff and found that the regulation does not encompass Plaintiff's cell phone.").

added)), ¶ 22 ("From November 27, 2018 (the date of his DNC registration) through the filing of this Complaint, Plaintiff received approximately 44 calls from Unique *and/or* Platinum." (emphasis added)); *see also id.* at ¶ 12 ("Unique *and/or* Platinum referred in calls to Plaintiff having stayed at Hilton-branded properties in the past . . . [and] Unique *and/or* Platinum indicat[ed] that Plaintiff's phone number was provided to them by Hilton." (emphasis added)).) *Cf. Smith v. Direct Building Supplies, LLC*, Civil Action No. 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) ("[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone . . . .Smith has not pleaded facts sufficient to identify Direct Building Supplies as the initiator of the offending calls . . . The [complaint] provides not details specifying how Smith knew that Direct Building Supplies in fact placed these calls, such that Direct Building Supplies' name appeared in the caller ID on Smith's cellular phone, [or that] the persons with whom Smith spoke identified themselves as representatives of Direct Building Supplies[.]"). Because Marks has not pleaded facts supporting his assertion that Unique placed the calls, the Court cannot conclude that Marks has pleaded a legitimate cause of action under § 227(c).

III.

Because Marks has not stated a legitimate cause of action for breach of contract, the Court denies Marks's motion for default judgment against Unique, without prejudice.

An appropriate order follows.