## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRUCE S. MARKS**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 20-4915-KSM** |
| **UNIQUE LIFESTYLE VACATIONS, LLC,** | |
| Defendant. | |

### MEMORANDUM

**MARSTON, J.**                                                                                              **May 5, 2023**

Presently before the Court is Plaintiff Bruce Marks's second motion for default judgment against Defendant Unique Lifestyle Vacations ("Unique") in a Telephone Consumer Protection Act ("TCPA") case.  For the reasons discussed below, the Court denies the motion.

### I.

On November 27, 2018, Marks registered his personal[1] cell phone number on the national Do-Not-Call ("DNC") registry.[2]  (Doc. No. 40 at ¶¶ 3, 18, 21.)  Nonetheless, even after that date, Marks continued to receive telemarketing sales calls from Unique, a Florida LLC with its principal place of business located at 2251 Consulate Dr. Ste. D, Orlando, FL 32837.  (*Id.* at ¶¶ 3, 9, 18.)  Unique uses telemarking to promote vacation products and services.  (*Id.* at ¶¶ 16, 27.)  Marks had never done any transactions with Unique, nor had he provided Unique with his cell

---

[1] Marks alleges he uses his cell phone for personal purposes, including booking vacations.  (Doc. No. 40 at ¶ 25.)

[2] Under Marks's T-Mobile plan, he incurs a charge for incoming/outgoing calls on his personal cell phone.  (Doc. No. 40 at ¶ 25.)

phone number.  (*Id.* at ¶ 24.)

From November 27, 2018 (the date of Marks's DNC registration) until Marks filed his Complaint on October 5, 2020, Marks received approximately 43 calls from Unique, which included one call on November 29, 2019, two calls on January 6, 2020, two calls on January 21, 2020, one call on January 24, 2020, and two calls on February 6, 2020.  (*Id.* at ¶ 18.)  Marks repeatedly requested that Unique stop calling him and that it add his number to its internal "Do Not Call" list.  (*Id.* at ¶ 20.)  In addition, on January 9, 2020, Marks informed Unique in a letter sent by certified mail:  "Effective today . . . your company is to STOP ALL CALLS and TEXT MESSAGES to my cell phone, 215-939-[XXXX].  I do not authorize your contact with my cell phone . . . I have repeatedly requested that these CALLS concerning vacations cease over the last several years." (*Id.* at ¶ 19.)  Notwithstanding Marks's registration on the DNC list, his verbal requests, and his letter, Marks continued to receive telemarketing calls from Unique.  (*Id.* at ¶ 21.)

On October 5, 2020, Marks filed a complaint in this Court, asserting claims against Unique under the TCPA (Doc. No. 1); four days later, he filed an amended complaint (Doc. No. 2).  When Unique failed to respond to the complaint within 21 days, Marks moved for entry of default (Doc. No. 5), which this Court denied, without prejudice, on December 8, 2020 for failure to properly abide by Pennsylvania rules for service by mail (*see* Doc. No. 6).  On January 29, 2021, Marks again moved for entry of default (Doc. No. 15), which the Clerk of Court entered that same day.  Marks then moved for default judgment, seeking $210,000 in damages. (Doc. No. 16.)  On April 21, 2021, Marks notified the Court that following the Supreme Court's ruling in *Facebook, Inc. v. Dugid*, 141 S. Ct. 1163 (2021), he was withdrawing his claims under 47 U.S.C. § 227(b) and that default judgment should be entered in the amount of $64,500

instead.  (Doc. No. 26.)  The Court held a hearing on the motion on October 14, 2021.  On

November 22, 2021, the Court denied Marks's motion for default judgment, without prejudice,

after concluding that Marks had failed to plead facts to support his assertion that Unique placed

the telemarketing calls and therefore had not pled a legitimate cause of action under the TCPA.

(Doc. Nos. 36, 37.)

On December 3, 2021, Marks filed a motion for reconsideration (Doc. No. 38), which the

Court denied (Doc. No. 39).  Marks also requested leave to file a Second Amended Complaint

(Doc. No. 38), which the Court granted (Doc. No. 39).  In its December 6, 2021 Order, the Court

expressly cautioned Marks that in his Second Amended Complaint, he needed to plead "facts

supporting his 'belief' that he received 43 calls from Unique."  (Doc. No. 39 at n.1; *see also id.*

("Marks must include details explaining how he knew that Unique in fact placed these calls (i.e.,

that persons with whom he spoke identified themselves as representatives of Unique, that

Unique's name appeared in the caller ID, etc.).  Although Marks identifies the phone numbers

used in eight of these calls, he does not allege, for example, facts suggesting that these are phone

numbers associated with Unique.").)

On December 28, 2021, Marks filed a Second Amended Complaint.  (Doc. No. 40.)  On

October 17, 2022, the Court issued an Order directing Marks to file a request for default against

any non-responsive Defendant by Monday, November 7, 2022, and if he did not do so, the Court

would dismiss the case for failure to prosecute.  (Doc. No. 42.)  On November 7, Marks

requested that default be entered against Unique (Doc. No. 43), and the Clerk of Court entered

default that same day.  On March 29, 2023, the Court issued another failure to prosecute order,

informing Marks that if he did not file a default judgment motion by April 12, 2023, the case

would be dismissed for lack of prosecution.  (Doc. No. 44.)  The next day, March 30, Marks filed

his second motion for default judgment.  (Doc. No. 45.)

The Court held a show cause hearing as to why default judgment should not be entered against Unique on May 2, 2023.

## II.

"After a clerk enters default pursuant to Federal Rule of Civil Procedure 55(a) against a party that has 'failed to plead or otherwise defend' an action, the party may be subject to entry of a default judgment."  *Serv. Emps. Int'l Union*, 325 F. Supp. 3d 631, 634 (E.D. Pa. 2018) (quoting Fed. R. Civ. P. 55(a)).  The clerk may enter default judgment in a plaintiff's favor if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation."  Fed. R. Civ. P. 55(b)(1).  "In all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).

When a party moves for default judgment, the Court considers the three factors outlined by the Third Circuit in *Chamberlain v. Giampapa*:  "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  210 F.3d 154, 164 (3d Cir. 2000); *see also, e.g.*, *Spurio v. Choice Sec. Syst., Inc.*, 880 F. Supp. 402, 404 (E.D. Pa. 1995) (same).  Before turning to the *Chamberlain* factors, however, the Court must first "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 635 (quotation marks omitted).

Here, the Court again finds Marks is unable to establish all the elements to state a claim under § 227(c) for violation of the DNC Registry.  Section 227(c)(3)(F) states that if the Federal Trade Commission decides to establish a DNC database, the regulations shall "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any

subscriber included in such database."  47 U.S.C. § 227(c)(3)(F).  In turn, the resulting regulation states, "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."  47 C.F.R. § 64.1200(c)(2).

As discussed in our November 22, 2021 Memorandum, the Court finds that Marks's "allegations pertaining to his cell phone—namely, that he used the cell phone for 'personal purposes, including booking vacations' are sufficient to meet this first element."  (Doc. No. 36 at 4–5 (citations omitted).)

But Marks still has not pleaded facts to show that Unique was the party making the calls—despite the Court's highlighting of this issue in its November 22, 2021 Memorandum (Doc. No. 36 at 5–6) and December 6, 2021 Order (Doc. No. 39 at n.1).  *Cf. Smith v. Direct Building Supplies, LLC*, Civil Action No. 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) ("[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone . . . . Smith has not pleaded facts sufficient to identify Direct Building Supplies as the initiator of the offending calls . . . The [complaint] provides not details specifying how Smith knew that Direct Building Supplies in fact placed these calls, such that Direct Building Supplies' name appeared in the caller ID on Smith's cellular phone, [or that] the persons with whom Smith spoke identified themselves as representatives of Direct Building Supplies[.]").  *Contra Smith v. American-Amicable Life Ins. Co. of Tex.*, Civil Action No. 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) ("In a TCPA action, the plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's phone. . . . In support of his

conclusion that the prerecorded calls were made by or on behalf of American-Amicable, Plaintiff

alleges that he was informed on both of the prerecorded calls and the subsequent live calls that

he was 'speaking with American-Amicable,' and he was directed to American-Amicable's

website during the second prerecorded call. . . . The Court finds that, if true, Plaintiff's allegation

that he was informed during both prerecorded calls that he was speaking with American-

Amicable supports a plausible inference that Smith was indeed called by or on behalf of

American-Amicable.  This inference is also supported by the allegation that both calls concerned

insurance benefits—American-Amicable's area of business." (cleaned up).).

       All Marks appears to have done in his Second Amended Complaint is remove references

to Platinum, rather than add any factual allegations answering the question: "How did Marks

know that Unique was the party that made the calls?" [3]  (*Compare* Doc. No. 2 at ¶ 22 ("From

November 27, 2018 (the date of his DNC registration) through the filing of this Complaint,

Plaintiff received approximately 44 calls from Unique and/or Platinum [a co-defendant]."), *with*

Doc. No. 40 at ¶ 18 ("From November 27, 2018 (the date of his DNC registration) through the

filing of the Complaint, Plaintiff received approximately 43 calls from Unique.").)  (*Compare*

Doc. No. 2 at ¶ 25 ("Despite being on the DNC list as of November 27, 2018, despite his January

2020 letter, and despite his repeated demands that Defendants' calls cease, Plaintiff continued to

receive calls from Defendants."), *with* Doc. No. 40 at ¶ 21 ("Despite being on the DNC list as of

November 27, 2018, despite his January 2020 letter, and despite his repeated demands that

Defendant's calls cease, Plaintiff continued to receive calls from Defendant.").)  Because Marks

has still not pleaded facts supporting his assertion that Unique placed the calls, the Court cannot

---

[3] Contrary to the Court's policies and procedures, Marks did not file a redline of his Second Amended Complaint.  *See* Judge Marston's Policies & Procedures, Section II.B.6 ("All amended pleadings and motions to amend a pleading must include a redline showing the changes made to the original pleading.").

conclude that Marks has pleaded a legitimate cause of action under § 227(c).[4]

III.

Because Marks has not stated a legitimate cause of action, the Court denies Marks's motion for default judgment against Unique.

An appropriate Order follows.

---

[4] During the default judgment hearing, Plaintiff's counsel argued that the Requests for Admission (the "RFAs") he served upon Unique—and which Unique did not answer—supported Plaintiff's argument that Unique made the calls. The case Plaintiff relies upon, *Shelton v. FCS Capital LLC*, Case No. 2:18-cv-03723-JDW, 2019 WL 6726404 (E.D. Pa. Dec. 11, 2019), is inapposite—it was a summary judgment case and *not* in the default judgment context. It also does not appear that the RFAs were appropriately served, given that the parties have never conferred under Rule 26. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."). *Cf. FKS Akkad Capital GP, LLC v. JohnFK Med. Co., Inc.*, C.A. No. 20-952-CFC, 2022 WL 1184639, at *1 (D. Del. Apr. 21, 2022) ("Plaintiffs' record support for many of their assertions of fact come from Defendant's failure to respond to Plaintiffs' August 6, 2021 First Set of Requests for Admission. Since the record does not reflect that the parties have ever conferred as required by Rule 26(f), it is unclear whether Plaintiffs' discovery requests were appropriately served. I am also skeptical of the propriety of granting summary judgment against an unrepresented corporate entity where the record support for the movant's assertions of fact consists of defaulted requests for admission (and Plaintiffs' briefing cites no authority suggesting that it is proper." (citing Fed. R. 26(f)(d)(1))).