**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRUCE S. MARKS**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 20-4915-KSM** |
| **UNIQUE LIFESTYLE VACATIONS, LLC,** | |
| Defendant. | |

**MEMORANDUM**

**MARSTON, J.**                                                                                    **July 7, 2023**

Plaintiff Bruce Marks brings claims against Defendant Unique Lifestyle Vacations, LLC ("Unique") under the Telephone Consumer Protection ("TCPA").  Presently before the Court is Marks's Motion for Leave to File Third Amended Complaint.  (Doc. No. 52.)  For the reasons set out below, Marks's motion is granted.

## I.    BACKGROUND

The Court recently recounted the facts of this case at length in a Memorandum Opinion published on May 5, 2023.[1]  (Doc. No. 49.)  Because the Court writes for the benefit of the Plaintiff,

---

[1] The Court summarized the events that gave rise to this litigation, based on the allegations in the Second Amended Complaint (Doc. No. 40), as follows:

> On November 27, 2018, Marks registered his personal cell phone number on the national Do-Not-Call ("DNC") registry.  Nonetheless, even after that date, Marks continued to receive telemarketing sales calls from Unique, a Florida LLC with its principal place of business located at 2251 Consulate Dr. Ste. D, Orlando, FL 32837.  Unique uses telemarking to promote vacation products and services.  Marks had never done any transactions with Unique, nor had he provided Unique with his cell phone number.  From November 27, 2018 (the date of Marks's DNC registration) until Marks filed his Complaint on October 5, 2020, Marks received approximately 43 calls from Unique, which included one call on November 29, 2019, two calls on January 6, 2020, two calls on January

who is familiar with the issues before the Court, it reviews only the facts relevant to the pending motion.

### A.      The First Amended Complaint

On October 5, 2020, Marks filed his Original Complaint in this Court, asserting claims against Unique under the TCPA (Doc. No. 1); four days later, he filed the First Amended Complaint (Doc. No. 2).  When Unique failed to respond to the First Amended Complaint within 21 days, Marks moved for entry of default (Doc. No. 5), which this Court denied, without prejudice, on December 8, 2020 for failure to properly abide by Pennsylvania rules for service by mail (*see* Doc. No. 6).  On January 29, 2021, Marks again moved for entry of default (Doc. No. 15), which the Clerk of Court entered that same day.  Marks then moved for default judgment.[2] (Doc. No. 16.)  The Court held a hearing on the motion on October 14, 2021.  On November 22, 2021, the Court denied Marks's motion for default judgment, without prejudice, after concluding that Marks had failed to plead facts to support his assertion that Unique placed the telemarketing calls and therefore had not pled a legitimate cause of action under the TCPA.  (Doc. Nos. 36, 37.)

On December 3, 2021, Marks filed a motion for reconsideration (Doc. No. 38), which the

---

> 21, 2020, one call on January 24, 2020, and two calls on February 6, 2020. Marks repeatedly requested that Unique stop calling him and that it add his number to its internal "Do Not Call" list.  In addition, on January 9, 2020, Marks informed Unique in a letter sent by certified mail:  "Effective today . . . your company is to STOP ALL CALLS and TEXT MESSAGES to my cell phone, 215-939-[XXXX].  I do not authorize your contact with my cell phone . . . I have repeatedly requested that these CALLS concerning vacations cease over the last several years."  Notwithstanding Marks's registration on the DNC list, his verbal requests, and his letter, Marks continued to receive telemarketing calls from Unique.

(Doc. No. 49 at 1–2 (internal citations omitted).)

[2] Marks's original motion for default judgment sought $210,000 in damages. (Doc. No. 16.)  On April 21, 2021, Marks notified the Court that following the Supreme Court's ruling in *Facebook, Inc. v. Dugid*, 141 S. Ct. 1163 (2021), he was withdrawing his claims under 47 U.S.C. § 227(b) and that default judgment should be entered in the amount of $64,500 instead.  (Doc. No. 26.)

Court denied (Doc. No. 39).  Marks also requested leave to file a Second Amended Complaint (Doc. No. 38), which the Court granted (Doc. No. 39).  In its December 6, 2021 Order, the Court expressly cautioned Marks that in his Second Amended Complaint, he needed to plead "facts supporting his 'belief' that he received 43 calls from Unique."  (Doc. No. 39 at n.1; *see also id.* ("Marks must include details explaining how he knew that Unique in fact placed these calls (i.e., that persons with whom he spoke identified themselves as representatives of Unique, that Unique's name appeared in the caller ID, etc.).  Although Marks identifies the phone numbers used in eight of these calls, he does not allege, for example, facts suggesting that these are phone numbers associated with Unique.").)

### B.      The Second Amended Complaint

On December 28, 2021, Marks filed a Second Amended Complaint.  (Doc. No. 40.)  On October 17, 2022—ten months after the Second Amended Complaint was filed—the Court issued an Order directing Marks to file a request for default against any non-responsive Defendant by Monday, November 7, 2022, and if he did not do so, the Court would dismiss the case for failure to prosecute.  (Doc. No. 42.)  On November 7, Marks requested that default be entered against Unique (Doc. No. 43), and the Clerk of Court entered default that same day.  On March 29, 2023, the Court issued another failure to prosecute order, informing Marks that if he did not file a default judgment motion by April 12, 2023, the case would be dismissed for lack of prosecution.  (Doc. No. 44.)  The next day, March 30, Marks filed his second motion for default judgment.  (Doc. No. 45.)  The Court then held a show cause hearing as to why default judgment should not be entered against Unique on May 2, 2023.

On May 5, 2023, the Court denied Marks's second motion for default judgment (Doc. Nos. 49, 50).  The Court again found that Marks had failed to plead facts to show that Unique was the

party who made the unwanted calls. (Doc. No. 49 at 4–5; *see id.* at 5 ("But Marks still has not pleaded facts to show that Unique was the party making the calls—despite the Court's highlighting of this issue in its November 22, 2021 Memorandum (Doc. No. 36 at 5–6) and December 6, 2021 Order (Doc. No. 39 at n.1).").)  Because Marks was "unable to establish all the elements to state a claim under § 227(c) for violation of the DNC Registry" the Court could not enter default judgment on the Second Amended Complaint. (*See id.* at 4; *see also id.* at 6 ("All Marks appears to have done in his Second Amended Complaint is remove references to Platinum, rather than add any factual allegations answering the question: 'How did Marks know that Unique was the party that made the calls?'").)

###        C.        The Third Amended Complaint

On June 13, 2023, the Court received correspondence from Marks, expressing his intent to file a motion for leave to file a Third Amended Complaint. (*See* Doc. No. 51.)  Marks explained that, upon reading the Court's May 5 Memorandum, he was "now aware of Your Honor's view as to how in a TCPA action, the plaintiff must allege facts to support his conclusion of belief that defendant is the party that made the calls to the plaintiff's phone." (*Id.* (internal citations omitted).)  Marks assured the Court that the proposed Third Amended Complaint "will include specific details supporting Mr. Marks' belief that defendant United [sic] Lifestyle Vacations, Inc. made the calls to his phone." *Id.*

As promised, on June 23, 2023, Marks filed a Motion for Leave to File the Third Amended Complaint (Doc. No. 52).  Marks's proposed Third Amended Complaint includes two new paragraphs that allege Unique was the party who made the unwanted calls:

> 18.        For the calls received referenced in Paragraph 17 [calls made before Plaintiff registered his phone number on the DNC Registry], to the best of Plaintiff's recollection, the callers either identified themselves as Unique, or when Plaintiff asked the callers to identify

themselves, the callers responded that he or she was calling from "Unique Lifestyle Vacations". Plaintiff's office also compared the incoming phone numbers to phone number lists on the internet by which consumers complained about telemarketing harassment.

20. For the calls received referenced in Paragraph 19 [calls made after Plaintiff registered his phone number on the DNC Registry], the callers either identified themselves as Unique, or when Plaintiff asked the callers to identify themselves, the callers responded that he or she was calling from "Unique Lifestyle Vacations". Thus, Plaintiff knows based upon personal knowledge that these calls were made by persons who admitted association with Unique.

(Doc. No. 52-2 at ¶¶ 18, 20.) Marks claims that these additions "conform to the necessary pleading requirements noted in Judge Marston's May 5, 2023 Opinion and clarify allegations of Plaintiff's knowledge that calls in violation of the TCPA came from Unique." (Doc. No. 52 at 1.)

## II.    LEGAL STANDARD

Generally, a motion to file an amended pleading is governed by Federal Rule of Civil Procedure 15, which allows a party to "amend its pleading once as a matter of course within 21 days after serving it, or . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether justice requires the court to allow amendment, the court must consider whether amendment would unduly "prejudice" the opposing party. *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010). "Prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1993)). "In the absence of substantial or undue prejudice, denial [of a motion for leave to amend] must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated

failure to cure deficiency by amendments previously allowed or futility of amendment." *Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of the V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981).

## III.   DISCUSSION

Marks argues that the Court should grant him leave to file the Third Amended Complaint because he does not seek to file the Third Amended Complaint in bad faith or for any dilatory motive; there is no prejudice to the opposing party; the amendment he seeks would not be futile; and he has not shown any undue delay in the course of this litigation, nor has there been any repeated failure to correct deficiencies in previous amendments.  (*See* Doc. No. 52 at 4–5.)  The Court considers each of these arguments in turn.[3]

### A.      Marks Does Not Seek Leave to File an Amendment in Bad Faith

In seeking to file a Third Amended Complaint, Marks claims he "does not show any bad faith or dilatory motive."  (Doc. No. 52 at 4; *see id.* ("Plaintiff has no ulterior motive to delay and gains nothing from it.").)  In assessing bad faith, "[t]he scope of the court's inquiry is limited to whether the motion to amend itself is being made in bad faith, not whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith." *Trueposition, Inc. v. Allen Telecom, Inc.*, No. CIV.A.01-823 GMS, 2002 WL 1558531, at *2 (D. Del. July 16, 2002) (cleaned up); *see also J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 614 (3d Cir. 1987) ("[T]he question of bad faith, requires that we focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier[.]").  Here, Marks reports that

---

[3] The Court acknowledges that any one of the factors under Rule 15(a) could justify the denial of Marks's motion for leave to file a Third Amended Complaint.  *See Amquip Corp. v. Admiral Ins. Co.*, 231 F.R.D. 197, 199 (E.D. Pa. 2005) ("In reciting the factors to be considered in the amendment analysis, some cases use the disjunctive, creating the impression that any one of the factors alone justifies denying amendment."). Here, the Court addresses all the factors only because Marks raises arguments under each.  In doing so, the Court is mindful of the general principle that "prejudice to the non-moving party is the touchstone for the denial of an amendment," and that denying leave to amend on only one factor, without more, would "overshadow the goal of having cases decided on the merits."  *Id.*

he wishes to file a Third Amended Complaint to rectify a persistent error in his past pleadings. (See Doc. No. 52 at 1, 3.)  The Court cannot not discern, and the record does not suggest, any bad faith or improper grounds for Marks's sought-after amendment.  Thus, this factor supports amendment.

### B.      Leave to Amend Would Not Prejudice Unique

Marks contends that Unique would not be prejudiced by the filing of a Third Amended Complaint, as "Unique has not even appeared in this case."  (Doc. No. 52 at 4.)  To show undue prejudice, a party opposing an amendment must "demonstrate that its ability to present its case would be seriously impaired were amendment allowed."  *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990). "In assessing potential prejudice, courts consider whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories."  *Energy Intel. Grp. Inc. v. PECO Energy Co.*, No. CV 21-2349-KSM, 2022 WL 329566, at *2 (E.D. Pa. Feb. 2, 2022) (quoting *Cureton v. Nat'l Coll. Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)).

The Court finds that Unique would not be prejudiced by the amendment.  Importantly, Marks's proposed amendment does not present a new legal theory, rather, it "simply presents additional facts in support of the *same* legal theory."  *Id.* at *2 (emphasis in original); *see also Dole*, 921 F.2d at 488 (explaining that the proposed amended complaint was "based upon facts and circumstances which do not differ significantly from those underlying the [the plaintiff's] original allegations" where the proposed amendment sought only to add more specific allegations regarding the defendant's alleged wrongdoing).  The new paragraphs in the Third Amended Complaint add facts that undergird Marks's existing legal claims, by demonstrating Marks's personal knowledge that the unwanted calls were made by Unique.  Moreover, the proposed

amendment will not necessitate new discovery, costs, or preparation by the defense because—as Marks has pointed out—Unique is a defaulted party and has not appeared in this case since it was first filed almost three years ago.  The filing of a Third Amended Complaint could not possibly harm Unique's ability to defend itself or engage in discovery, as it has never asserted a defense and discovery has never opened.  (*See* Doc. No. 49 at 7 n.4 (noting that the Requests for Admission ("RFAs") served by Marks on Unique were not appropriately served "given that the parties have never conferred under Rule 26.").)  *Cf. Fargione v. Sweeney*, Civil Action No. 16-5878, 2018 WL 3533704, at *6 (E.D. Pa. July 23, 2018) (granting leave to amend where "[n]o new claims [were] being asserted and discovery [had] not yet closed").  For these reasons, Unique will not be prejudiced by the proposed additions to the Third Amended Complaint, and this factor favors amendment.

### C.    The Proposed Amendment is Not Futile

Marks contends that the proposed additions in paragraphs 18 and 20 of the Third Amended Complaint are not futile because, "[w]hen the necessary language is added, the Third Amended Complaint makes out a prima facie case against Unique pursuant to the TCPA."  (Doc. No. 52 at 5.)  "Amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  *McCormick v. Kline*, 670 F. App'x 764, 766 (3d Cir. 2016) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000)) (cleaned up); *see also Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008) ("In assessing futility, the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).")  "To survive a motion to dismiss under 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *White v. Bush*, No. CV 20-2059-KSM, 2021 WL 2255981, at *6 (E.D. Pa. June 3, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Here, Marks brings a claim under § 227(c) of the TCPA for violation of the DNC Registry. Section 227(c)(3)(F) states that if the Federal Trade Commission decides to establish a DNC database, the regulations shall "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database." 47 U.S.C. § 227(c)(3)(F).  In turn, the resulting regulation states, "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). To state a claim for a violation of this subsection, plaintiffs "must plead that (1) they receive[d] multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the [Do Not Call] List." *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 604 (E.D. Pa. 2021) (citing *Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020)).

In its most recent Memorandum, the Court explained that "Marks's allegations pertaining to his cellphone—namely, that he used the cell phone for 'personal purposes, including booking vacations'" were sufficient to meet the third element.  (Doc. No. 49 at 5 (citing Doc. No. 36 at 4–5 (finding the same in November 22, 2021 Memorandum denying Marks's first motion for default judgment).)  As to the first element, Marks had previously included a chart in all prior versions of his complaint (which also appears in paragraph 19 of his Third Amended Complaint), demonstrating that he had received multiple unwanted calls after registering his phone number on

the DNC Registry between November 2019 and February 2020.[4]  (*See* Doc. No. 1 at ¶ 22; Doc. No. 2 at ¶ 22; Doc. No. 40 at ¶ 18; Doc. No. 52-2 at ¶ 19.)  As for the second element, which was not satisfied by the averments in Marks's earlier pleadings, the proposed amendments in paragraphs 19 and 20 of the Third Amended Complaint now provide the previously missing information that the unwanted calls were made "by or on behalf of the same entity," in this case, Unique.  *Camunas*, 541 F. Supp. 3d at 604.  Thus, accepting as true the allegations contained on the face of the proposed Third Amended Complaint, Marks's amendments state a plausible claim under § 227(c) of the TCPA.  This factor supports amendment.

### D.     Marks Repeatedly Failed to Correct Deficiencies

Marks argues that he has not repeatedly failed to correct deficiencies with previous amendments.  (*See* Doc. No. 52 at 4.)  He notes that the First Amended Complaint, which was filed as of right, was promptly amended four days after the Original Complaint to correct "service issues."  (*Id.*)  He also notes that the Second Amended Complaint was filed "within three weeks of the Court granting leave" and that the proposed Third Amended Complaint, which includes the Court's requested corrections, was filed "approximately 6 weeks after the motion for entry of default was denied."  (*Id.* at 5.)  But the pertinent question as to this factor is not the timeliness of Marks's amendments, but whether Marks had "numerous opportunities to correct any deficiencies" in his TCPA claim, "but failed to take advantage of them."  *Lorenz*, 1 F.3d at 1414 (denial of leave to amend was proper where "repeated failures to cure the deficiency by amendments previously allowed").

---

[4] These allegations vary slightly in earlier pleadings Marks filed in this case.  The Original Complaint and First Amended Complaint reference a call allegedly made on September 16, 2020, an allegation that was not included in the Second Amended Complaint or proposed Third Amended Complaint.  Notably, Marks has also removed from the proposed Third Amended Complaint his allegation that he received upwards of 40-some calls during this period—instead, he references only 8 specific calls that were made between November 2019 and February 2020.

Marks has been aware of the material omission in his pleading since November 22, 2021, when the Court denied his motion for default judgment after finding that the First Amended Complaint failed to plead facts to support his assertion that Unique had placed the unwanted telemarketing calls. (Doc. No. 36 at 6.) Marks was advised of this defect again on December 6, 2021, when the Court granted his motion for leave to file a Second Amended Complaint, and specifically instructed Marks to include facts in his new pleading to support his belief that Unique had placed the calls. (Doc. No. 39 at n.1.) Marks failed to heed both of those warnings, as the Court noted on May 5, 2023, when it denied Marks's second motion for default judgment for the same reason. (Doc. No. 49 at 4–5.) In total, the Court has apprised Marks of this consistent flaw in his pleadings no less than *three* times; Marks's ostrich-like contention that he has only "now" become aware of this deficiency (*see* Doc. No. 51) is hardly credible.  For this reason, the Court finds that this factor does not favor amendment.  *See Deckard v. Emory*, No. CV 17-5182, 2020 WL 3960421, at *5 (E.D. Pa. July 13, 2020) ("This case was initiated three years ago, and plaintiff has already amended his Complaint twice. The Court thus declines to grant plaintiff a third opportunity to correct the deficiencies in his claims.").

### E. Marks's Motion for Leave is Not Unduly Delayed

Plaintiff argues that leave to amend should be granted because he "has not shown undue delay" in the prosecution of this matter, and that he "has consistently met the deadlines set by the Court in its case management orders."  (Doc. No. 52 at 4.)  The Court disagrees.  Marks cites two instances of his compliance with this Court's Orders (*see id.* at 4 (citing compliance with Court's October 17, 2022 Order and compliance with March 29, 2023 Order)) as evidence of his diligence, but he conspicuously fails to mention the context in which those Orders were entered.  On October 17, 2022, almost a full year after the Second Amended Complaint was filed, the Court ordered

Marks to file a request for default against Unique or it would dismiss this case for lack of prosecution. (Doc. No. 42.) And on March 29, 2023, the Court issued *another* failure to prosecute order, informing Marks that if he did not file a motion for default judgment, the case would be dismissed for lack of prosecution. (Doc. No. 44.) Marks's compliance with these Orders—in which the Court threatened to dismiss Marks's case because of his repeated inaction—is not helpful to his argument.

Nevertheless, the Court acknowledges that "delay alone does not justify denying a motion to amend." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 225 (E.D. Pa. 2012) (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). "Rather, it is only where delay becomes undue, placing an unwarranted burden on the court, or prejudicial, placing an unfair burden on the opposing party, that denial of a motion to amend is appropriate." *Id.* (cleaned up). *see also Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) ("The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiff's motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the defendants."); *Leary v. Nwosu*, No. Civ.A.05–5769, 2007 WL 2892641, at *4 (E.D. Pa. Oct. 2, 2007) ("Tactical decisions and dilatory motives may lead to a finding of undue delay."). Accordingly, "the question of undue delay requires the court to focus on the movant's reasons for not amending sooner, while bearing in mind the liberal pleading philosophy of the federal rules." *Synthes, Inc.*, 281 F.R.D. at 225 (quoting *Cureton*, 252 F.3d at 273); *see also In re Pressure Sensitive Labelstock Antitrust Litig.*, No. MDL.03–1556, 2006 WL 433891, at *1 (M.D. Pa. Feb. 21, 2006) ("Implicit in the concept of undue delay is the premise that Plaintiffs, in the exercise of due diligence, could have sought relief from the court earlier.").

Marks offers no explanation as to why he did not seek amendment sooner. Although he

swiftly moved for leave to file the Third Amended Complaint within six weeks after the Court denied his second motion for default judgment (*see* Doc. No. 52 at 5), Marks does not explain why he failed to follow the Court's instructions when he filed his Second Amended Complaint almost two years ago.  Still, the Court is mindful that "the mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay." *Collins v. City of Gloucester*, No. Civ.A.06–2589, 2008 WL 1374213, at *6 (D.N.J. Apr. 9, 2008). Moreover, "there is no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" *Arthur v. Maersk, Inc.*, 434 F.3d 196, 205 (3d Cir. 2006) (finding a period of eleven months from commencement of an action to the filing of a motion for leave to amend was not so excessive as to be unduly delayed). And even in the absence of any proffered reason for the delay, the Court cannot discern any tactical decision or dilatory motive Marks would have had to defer this amendment—as Marks himself noted, he "gains nothing" by the continued delay of these proceedings. (Doc. No. 52 at 4.) Finally, as the Court discussed, *supra*, there is no prejudice to Unique in allowing Marks to file a Third Amended Complaint this late in the litigation. For these reasons, the Court finds that Marks's motion is not unduly delayed.

*   *   *

To summarize, the Court finds that only one of the factors—repeated failure to correct deficiencies in the pleading—would justify the denial of Marks's motion for leave to file a Third Amended Complaint. But this factor "must be coupled with a resultant burden on the court or prejudice to the other party." *Amquip Corp.*, 231 F.R.D. at 199 (citing *Cureton*, 252 F.3d at 273); *Synthes, Inc.*, 281 F.R.D. at 225 (explaining that the obligation of the district court in its disposition of a motion to amend is to articulate the imposition or prejudice caused by the amendment). No such prejudice to Unique is apparent. And—annoyance notwithstanding—there is no additional

burden on the Court in allowing Marks to file an amended pleading.

The Court emphasizes that Marks has benefitted from the liberal nature of the amendment standard*, see Foman*, 371 U.S. at 182 ("In the absence of any apparent or declared reason…the leave sought should, as the rules require, be 'freely given.'"), but he is warned that the Court's patience is waning; further delays in the prosecution of this matter will not be tolerated.

## IV.     CONCLUSION

For these reasons, Plaintiff Marks's motion is granted.  An appropriate Order follows.