## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRUCE S. MARKS**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 20-4915-KSM** |
| **UNIQUE LIFESTYLE VACATIONS, LLC,** | |
| Defendant. | |

## MEMORANDUM

**MARSTON, J.**                                                                **March 11, 2024**

Presently before the Court is Plaintiff Bruce Marks's third motion for default judgment against Defendant Unique Lifestyle Vacations ("Unique") in a case arising under the Telephone Consumer Protection Act ("TCPA").  (Doc. No. 65.)  For the reasons discussed below, the Court grants the motion.

### I.      BACKGROUND

On November 27, 2018, Marks registered his personal[1] cell phone number on the national Do-Not-Call ("DNC") registry.[2]  (Doc. No. 55 at ¶¶ 3, 19, 23.)  Nonetheless, even after that date, Marks continued to receive telemarketing sales calls on his personal cell phone from Unique, a Florida LLC with its principal place of business located at 2251 Consulate Dr. Ste. D, Orlando, FL 32837.  (*Id.* at ¶¶ 3, 9.)  Unique uses telemarking to promote vacation products and

---

[1] Marks alleges he uses his cell phone for personal purposes, including booking vacations.  (Doc. No. 55 at ¶ 27.)

[2] Under Marks's T-Mobile plan, he incurs a charge for incoming/outgoing calls on his personal cell phone.  (Doc. No. 55 at ¶ 27.)

services.  (*Id.* at ¶¶ 16, 29.)  Marks had never done any transactions with Unique, nor had he provided Unique with his cell phone number.  (*Id.* at ¶ 26.)

From November 27, 2018 (the date of Marks' DNC registration) until Marks filed his Complaint on October 5, 2020, Marks received approximately 8 calls from Unique, which included one call on November 29, 2019, two calls on January 6, 2020, two calls on January 21, 2020, one call on January 24, 2020, and two calls on February 6, 2020.  (*Id.* at ¶ 19.)  Marks repeatedly requested that Unique stop calling him and that it add his number to its internal "Do Not Call" list.  (*Id.* at ¶ 22.)  In addition, on January 9, 2020, Marks informed Unique in a letter sent by certified mail:  "Effective today . . . your company is to STOP ALL CALLS and TEXT MESSAGES to my cell phone, 215-939-[XXXX].  I do not authorize your contact with my cell phone . . . . I have repeatedly requested that these CALLS concerning vacations cease over the last several years."  (*Id.* at ¶ 21.)  Notwithstanding Marks' registration on the DNC list, his verbal requests, and his letter, Marks continued to receive telemarketing calls from Unique.  (*Id.* at ¶ 23.)

On October 5, 2020, Marks filed a complaint in this Court, asserting claims against Unique under the TCPA.  (Doc. No. 1.)  Four days later, he filed an amended complaint (Doc. No. 2).  When Unique failed to respond to the amended complaint within 21 days, Marks moved for entry of default (Doc. No. 5), which this Court denied, without prejudice, on December 8, 2020 for failure to properly abide by Pennsylvania's rules for service by mail (*see* Doc. No. 6). On January 29, 2021, Marks again moved for entry of default (Doc. No. 15), which the Clerk of Court entered that same day.  Marks then moved for default judgment, seeking $210,000 in damages.  (Doc. No. 16.)  On April 21, 2021, Marks notified the Court that following the Supreme Court's ruling in *Facebook, Inc. v. Dugid*, 592 U.S. 395 (2021), he was withdrawing

his claims under 47 U.S.C. § 227(b) and that default judgment should be entered in the amount of $64,500 instead.  (Doc. No. 26.)  The Court held a hearing on the motion on October 14, 2021. On November 22, 2021, the Court denied Marks' motion for default judgment, without prejudice, after concluding that Marks failed to plead facts to support his assertion that Unique placed the telemarketing calls and therefore had not pled a legitimate cause of action under the TCPA.  (Doc. Nos. 36, 37.)

On December 3, 2021, Marks filed a motion for reconsideration (Doc. No. 38), which the Court denied (Doc. No. 39).  Marks also requested leave to file a second amended complaint (Doc. No. 38), which the Court granted (Doc. No. 39).  In its December 6, 2021 Order, the Court expressly cautioned Marks that in his second amended complaint, he needed to plead "facts supporting his 'belief' that he received 43 calls from Unique."  (Doc. No. 39 at n.1; *see also id.* ("Marks must include details explaining how he knew that Unique in fact placed these calls (i.e., that persons with whom he spoke identified themselves as representatives of Unique, that Unique's name appeared in the caller ID, etc.).  Although Marks identifies the phone numbers used in eight of these calls, he does not allege, for example, facts suggesting that these are phone numbers associated with Unique.").)

On December 28, 2021, Marks filed a second amended complaint.  (Doc. No. 40.) Because Defendant failed to file any response, on October 17, 2022, the Court issued an Order directing Marks to file a request for default against any non-responsive Defendant by Monday, November 7, 2022, and if he did not do so, the Court would dismiss the case for failure to prosecute.  (Doc. No. 42.)  On November 7, Marks requested that default be entered against Unique (Doc. No. 43), and the Clerk of Court entered default that same day.  On March 29, 2023, the Court issued another failure to prosecute order, informing Marks that if he did not file

3

a default judgment motion by April 12, 2023, the case would be dismissed for lack of prosecution.  (Doc. No. 44.)  The next day, March 30, 2023, Marks filed his second motion for default judgment.  (Doc. No. 45.)  Following a show cause hearing, the Court denied the motion for default judgment because Marks again failed to establish all the elements of a claim under § 227(c).  (Doc. No. 49 at 5–6.)  Of note, Marks again failed to plead facts demonstrating that Unique was the party making the calls.  (*Id*.)  On July 11, 2023, Marks filed a third amended complaint after receiving the Court's permission to do so.  (Doc. No. 55.)  On November 14, 2023, upon Plaintiff's request (Doc. No. 61) and because Defendant failed to respond to Plaintiff's third amended complaint, the Court entered default against Unique.  (Doc. No. 63.)  Then, on January 9, 2024, the Court again issued an Order directing Marks to file a motion for default judgment by January 24, 2024, or else the case would be dismissed for lack of prosecution.  (Doc. No. 64.)  Three days later, on January 12, 2024, Marks filed his third motion for default judgment against Unique.  (Doc. No. 65.)

The Court held a show cause hearing as to why default judgment should not be entered against Unique on March 6, 2024.  Unique did not appear at the hearing.

## II.    LEGAL STANDARD

"After a clerk enters default pursuant to Federal Rule of Civil Procedure 55(a) against a party that has 'failed to plead or otherwise defend' an action, the party may be subject to entry of a default judgment."  *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 634 (quoting Fed. R. Civ. P. 55(a)).  The clerk may enter default judgment in a plaintiff's favor if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation."  Fed. R. Civ. P. 55(b)(1).  "In all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  "The entry of a default judgment is largely a matter of judicial discretion, although the

Third Circuit has emphasized that such 'discretion is not without limits, however, and we repeatedly state our preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

When a party moves for default judgment, the Court considers the three factors outlined by the Third Circuit in *Chamberlain v. Giampapa*:  "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  210 F.3d 154, 164 (3d Cir. 2000); *see also, e.g.*, *Spurio v. Choice Sec. Syst., Inc.*, 880 F. Supp. 402, 404 (E.D. Pa. 1995) (same).

## III.    ANALYSIS

### A.  TCPA Violations

Before turning to the *Chamberlain* factors, the Court must first "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 635 (quotation marks omitted).[3]

---

[3] The Court must also confirm that it has personal and subject matter jurisdiction, *see Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017), and that process was properly served on the defendant, *see Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. CIV. 11-624 JBS/JS, 2011 WL 4729023, at *3 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F2d 14, 19 (3d Cir. 1985)).

Here, the Court has subject matter jurisdiction because Marks is suing under the TCPA, a law of the United States.  *See* 28 U.S.C. § 1331.  The Court also has personal jurisdiction over Unique because it called a phone number in Pennsylvania, establishing the requisite minimum contacts with Pennsylvania to give rise to personal jurisdiction.  *See Newell v. Strategic Admin. Grp., Inc.*, No. 2:20-CV-00967-JDW, 2020 WL 12770854, at *2 (E.D. Pa. May 6, 2020) (citing *Abramson v. Agentra, LLC*, Civ. A. No. 18-615, 2018 WL 6617819, at * 4 (W.D. Pa. Dec. 18, 2018)).

Second, process was properly served on Unique.  (*See* Doc. No. 62 (approving service of the third amended complaint).)  Additionally, in conforming with the Court's Order, Marks properly served Unique with notice of the default judgment hearing by personal service, email, and certified mail with return receipt requested.  (Doc. No. 68.)  Personal service upon Unique's registered agent was successful.

Here, the Court finds that Marks established all the elements of a claim under § 227(c) for violation of the DNC Registry.  Section 227(c)(3)(F) states that if the Federal Trade Commission decides to establish a DNC database, the regulations shall "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database."  47 U.S.C. § 227(c)(3)(F).  In turn, the resulting regulation states, "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."  47 C.F.R. § 64.1200(c)(2).

As discussed in our November 22, 2021 and May 5, 2023 Memoranda, the Court finds that Marks's "allegations pertaining to his cell phone—namely, that he used the cell phone for 'personal purposes, including booking vacations' are sufficient to meet this first element."  (Doc. No. 36 at 4–5 (citations omitted); Doc. No. 49 at 5.)

Marks has also now pleaded sufficient facts to show that Unique was the party making the calls.  Although he previously failed to state such allegations—for example, by merely stating that he received approximately 43 calls from Unique from November 27, 2018 through the filing of the Complaint (Doc. No. 40 at ¶ 18)—his third amended complaint adds that, "to the best of Plaintiff's recollection, the callers either identified themselves as Unique, or when Plaintiff asked the callers to identify themselves, the callers responded that he or she was calling from 'Unique Lifestyles Vacations'."  (Doc. No. 55 at ¶¶ 18, 20.)  This provides sufficient detail to support Marks' belief that Unique is the party that made the calls.  *See Smith v. American-Amicable Life Ins. Co. of Tex.*, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) ("In a TCPA

---

(Doc. No. 68-2.)

action, the plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's phone. . . . In support of his conclusion that the prerecorded calls were made by or on behalf of American-Amicable, Plaintiff alleges that he was informed on both of the prerecorded calls and the subsequent live calls that he was 'speaking with American-Amicable,' and he was directed to American-Amicable's website during the second prerecorded call. . . . The Court finds that, if true, Plaintiff's allegation that he was informed during both prerecorded calls that he was speaking with American-Amicable supports a plausible inference that Smith was indeed called by or on behalf of American-Amicable.  This inference is also supported by the allegation that both calls concerned insurance benefits— American-Amicable's area of business." (cleaned up)).  Thus, the Court finds that the third amended complaint states a TCPA § 227(c) claim.

### B.  Whether Default Judgment Is Appropriate

As discussed above, when a party moves for default judgment, the Court considers the three factors outlined by the Third Circuit in *Chamberlain v. Giampapa*:  "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  210 F.3d at 164; *see also, e.g.*, *Spurio*, 880 F. Supp. at 404 (same).

As to the first factor, prejudice to the plaintiff if default is denied, the Court finds Marks will be prejudiced if default judgment is not entered against Unique.  "A plaintiff will be prejudiced absent a default judgment where, due to the defendant's continued failure to respond to plaintiff's claims, the plaintiff is left with no other recourse."  *Mortland v. Castle Hosp., LLC*, No. CV 21-1351, 2022 WL 3586661, at *6 (W.D. Pa. Aug. 22, 2022) (quoting *Cyprus Mines Corp. v. M & R Indus., Inc.*, No. 14-4590, 2015 WL 1469529, at *8 (D.N.J. Mar. 30, 2015)).

Here, Marks has been attempting to pursue his claims for nearly four years without ever receiving any communication from Unique or any acknowledgment of his claims, despite repeated service of key court filings.  Unique's failure to respond could hypothetically continue indefinitely, leaving Marks without any other legal recourse.  *See Rayz v. Progressive Ad Sols., LLC*, No. CIV.A. 14-7147, 2015 WL 3555310, at *2 (E.D. Pa. June 8, 2015) (citing *Md. Cas. Co. v. Frazier Family Trust*, No. 13-2311, 2014 WL 345218, at *3 (E.D. Pa. Jan. 30, 2014)) ("Where, as here, a defendant fails to respond to the complaint, the potential delay threatens to carry on indefinitely, and that potential delay establishes prejudice to the plaintiff.").

As to the second factor, whether the defendant has a litigable defense, the Court is unaware of any meritorious defense to Marks' claims that Unique violated the TCPA.  As stated above, Marks has stated a claim for violations of the TCPA, and because Unique has not filed an answer, there are no facts to suggest Marks should not recover for those violations.  *Cf. Stevens v. Wiggins*, Civ. a. No. 90-7038, 1991 WL 152960, at *2 (E.D. Pa. Aug. 6, 1991) ("A defendant establishes a meritorious defense when defendant's answer, if established at trial, would constitute a complete defense to the action." (quotation marks omitted)).  In addition, the Court sees no issues on the face of the third amended complaint with jurisdiction, venue, or the statute of limitations.

Finally, as to the third factor, whether the defendant's delay is due to culpable conduct, "because Defendant was properly served but failed to appear in this action, [ . . . ] the inference is that Defendant's default was the result of culpable conduct."  *Frischberg v. Glob. Serv. Grp., LLC*, No. 117CV4449NLHKMW, 2018 WL 3472626, at *3 (D.N.J. July 19, 2018); *see also Kelly M. v. Luzerne Intermediate Unit*, 71 F. App'x 116, 118 (3d Cir. 2003) ("Jerrytone's conduct in failing to respond to the several personal notices he received from plaintiffs' counsel

or to appear at several hearings was culpable.")  Accordingly, the Court finds all three *Chamberlain* factors support the entry of default judgment in this case.

### C. Damages

Where a court enters default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).  Here, Marks argues that he is entitled to treble damages under § 227(c)(5)(C), totaling $12,000 for the eight alleged telephone calls received after his DNC registration, because Unique willfully called him in violation of the statute.  (Doc. No. 65-1 at 9.)

Pursuant to the TCPA, a claimant is entitled to 'received $500 in damages for each . . . violation."  47 U.S.C. § 227(c)(5)(B).  Additionally, "[i]f the court finds that the defendant *willfully or knowingly* violated the regulations prescribed under this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than [$1,500.]"  *Id.* § 227(c)(5)(C) (emphasis added).  To demonstrate "willfulness," a party must demonstrate more than just that the mere transmission of the telephone call was itself intentional to warrant treble damages.  *Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 570–71 (E.D. Pa. 2019).  "If we interpreted the statute to require only that the violator knew he was making a call or sending a fax, the statute would have almost no room for violations that are *not* willful or knowing."  *Id.* (citing *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015)).  However, ignorance of the law is insufficient to "insulate[] a defendant from the threat of treble damages."  *Id.* at 571.  A plaintiff may demonstrate willfulness if he demonstrates that the defendant knew that he did not have the plaintiff's consent to contact him.  *Id.* (citing *Kline v. United N. Mortg. Bankers Ltd.*, No. 4:18-CV-00489, 2018 WL 4404674, at *1 (M.D. Pa. Sept. 17, 2018)).

Here, Marks alleges that Unique willfully violated the TCPA because (1) Marks joined the DNC Registry in November 2018 (Doc. No. 55 at ¶¶ 17, 19), (2) he sent a letter via certified mail to Unique on January 9, 2020 demanding that they cease and desist from contacting him (*id.* ¶ 21), and (3) he "repeatedly requested" that Unique stop calling him (*id.* ¶ 22).  Marks filed an affidavit stating that he repeated oral requests that Unique stop calling on the following dates: August 6, 2017, March 8, 2018, and March 10, 2018.  (Doc. No. 16-2 at ¶ 9.)  The Court finds that this evidence supports the conclusion that Unique was aware that Marks did not consent to receive the telephone calls listed in the third amended complaint from November 2019 to February 2020.  (Doc. No. 55 at ¶ 19.)  Therefore, the Court holds that Unique willfully violated the TCPA in calling a person registered on the DNC list who did not consent to telemarketing calls, and grants an award of treble damages for each of the eight calls listed in the third amended complaint.  *Compare Cleveland v. Next Marvel Inc.*, TDC-23-1918, 2024 WL 198212, at *3 (D. Md. Jan. 18, 2024) (holding that the defendant willfully violated the TCPA in part because the plaintiff requested that the defendant stop contacting her on six occasions, but was nevertheless sent another telemarketing message) *with KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019) (declining to impose treble damages because the defendant believed that it had received permission from the plaintiff to contact it, and the plaintiff never asked the defendant to stop sending faxed advertisements).  Thus, the Court grants treble damages for each of the eight calls listed in the third amended complaint which Marks alleges he received following his registry on the DNC list (*see* Doc. No. 55 at ¶ 19), amounting to $12,000 in total damages.

## IV.   CONCLUSION

Because Marks has stated a legitimate cause of action, and demonstrated that default

judgment is appropriate, the Court grants his motion for default judgment against Unique.

An appropriate Order follows.